IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

DANIEL ALONZO MYERS,                )
                                    )
            Plaintiff,              )
                                    )
    v.                              )        CV 624-012
                                    )
ROBERT ADAMS, Warden, Jenkins       )
Correctional Facility,              )
                                    )
            Defendant.              )

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Wheeler Correctional Facility ("WCF"), is proceeding *pro se*

and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983 that concerns

events alleged to have occurred at Jenkins Correctional Facility ("JCF") in Millen, Georgia.

Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential

defendants.  Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-

Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.      Screening the Complaint**

   **A.      Background**

Plaintiff names Andrew McFarlane, JCF Warden, as the sole Defendant.  (Doc. no. 1,

pp. 1, 2.)  Taking all of Plaintiff's factual allegations as true, as the Court must for purposes

of the present screening, the facts are as follows.

Plaintiff, a prisoner under the supervision of the Georgia Department of Corrections,

(id. at 4), has had petit-mal seizures since age eight, and originally had a medically assigned

bottom bunk at JCF, (id. at 3.)  Despite Plaintiff's bottom bunk assignment, in mid-March 2023, Counselor Boatwright and Correctional Officer Gaston forced Plaintiff to move to a top bunk under threat of placement in administrative segregation and receipt of a disciplinary report.  (Id. at 3-4.)  Because Plaintiff was forced into a top bunk, when he suffered a seizure on August 29, 2023, and fell out of the top bunk, he suffered a spinal injury that required emergency treatment at an Augusta hospital.  (Id. at 5.)  As result of the fall from the top bunk, Plaintiff experiences continuing pain, numbness, limited range of motion in his arms, neck, and hands, as well as muscle and nerve spasms, incontinence, and lack of sex drive. (Id. at 4-5.)  Plaintiff seeks $4,850,000 in damages.  (Id. at 5.)

As to pursuing administrative remedies, Plaintiff acknowledges JCF and his current place of incarceration, WCF, both have a grievance procedure.  (Id. at 6-7.)  Although Plaintiff filed a grievance at WCF on January 17, 2024, he never received a response from staff or the WCF Warden.  (Id. at 6-7.)  Plaintiff did not file any appeal beyond WCF.  (Id. at 7.)

### B.    Discussion

#### 1.    Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson

v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

**2.      Plaintiff Fails to State a Claim for Relief Against Defendant Adams**

First, Plaintiff fails to mention Defendant Adams in his statement of claim, or anywhere else in the complaint beyond the caption and the portion of the complaint reserved for listing the names of defendants.  The Eleventh Circuit has held that a district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendant with the purported constitutional violation.  Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.").

Second, Plaintiff cannot hold Defendant Adams liable by virtue of his supervisory position.  "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."  Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (*per curiam*).  Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*.  See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted).  Therefore, to hold Warden Adams liable, Plaintiff must

4

demonstrate that he (1) actually participated in the alleged constitutional violation, or (2) there is a causal connection between the individual's actions and the alleged constitutional violation.  See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).  Here, Plaintiff appears to name Warden Adams as a Defendant not because of his direct involvement in the events about which he complains, but by virtue of his supervisory position.  Nowhere does Plaintiff allege Warden Adams was present for, or participated in, the decision to move Plaintiff from a bottom to a top bunk.  Indeed, he never mentions Warden Adams in the substantive portion of his complaint.

Therefore, Plaintiff must allege a causal connection between Defendant Adams and the asserted constitutional violation.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).  The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high.  In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).  A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).  There

is no mention in the complaint of any history of widespread abuse, let alone any custom or policy, regarding the procedure for changing bunk assignments.  Nor is there any suggestion Warden Adams directed Counselor Boatwright and/or Correctional Officer Gaston to change Plaintiff's bunk assignment.

In sum, Plaintiff fails to state a claim upon which relief can be granted against Defendant Adams.

### 3. Plaintiff Also Fails to State a Claim Upon Which Relief Can Be Granted Because He Did Not Exhaust Administrative Remedies

#### a. The Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies.  See Jones v. Bock, 549 U.S. 199, 215 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam); Solliday v. Fed. Officers, 413 F. App'x 206, 208 (11th Cir. 2011) (per curiam); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008) (per curiam).  The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002).

Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).  Rather, "[t]his provision entirely eliminates judicial discretion and instead

mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'" Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159; see also McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (per curiam) ("The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." (citation omitted)).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process before initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (per curiam); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156. "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Porter, 534 U.S. at 524.

b.      **Administrative Grievance Procedure**

Inmates like Plaintiff under the supervision of the Georgia Department of Corrections ("DOC") are subject to the Statewide Grievance procedure governed by the version of the DOC Standard Operating Procedure that resulted in the promulgation of Policy Number ("PN") 227.02, which became effective May 10, 2019.[1]   The grievance procedure has two steps:  (1) Original Grievance, and (2) Central Office Appeal.   PN 227.02 § IV(C).   The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor.   Id. § IV(C)(1)(c) & (d).   The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance.   Id. § IV(C)(1)(b).   The timeliness requirements of the administrative process may be waived upon a showing of good cause.   Id.   The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it.   Id. § IV(C)(1)(e)(i).   The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident.   Id.  § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted.   Id. § IV(C)(1)(f)(v).   If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal.   Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2).   The inmate has seven calendar days from the

---

[1]DOC policies cited herein are publicly available on the DOC web site.   See https://gdc.georgia.gov; *select* "About GDC" Menu option; *follow* link for Policies & Procedures; *select* Facilities Division Policies; *click on* link for desired PN (last visited June 4, 2024).

date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause.  Id. § IV(C)(2)(b).  The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal.  Id. § IV(C)(2)(e).  If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance.  Id. § (C)(2)(g).  The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal.  Id.

### c.     Plaintiff's Failure to Exhaust

In his complaint, dated March 5, 2024, Plaintiff states he filed a grievance at WCF on January 17, 2024, about his fall from the top bunk at JCF, but he never received a response from any WCF official.[2]  (Doc. no. 1, pp. 7, 11.)  Plaintiff also concedes that he never filed an appeal beyond WCF to the central office, even though the time had expired for a response to his original grievance.  (Id. at 7.)  Thus, the face of Plaintiff's complaint makes clear he did not complete the two-step grievance process prior to filing his federal lawsuit because he did not file an appeal.  That is, Plaintiff improperly bypassed the appeals process when he chose not to file a central office appeal when he did not receive a response from the Warden in the allotted forty-day window.

Allowing Plaintiff to decide for himself to bypass the grievance process defeats the rationale behind requiring "proper exhaustion":

---

[2]Plaintiff does not explain why he did not file a grievance at JCF.  (See doc. no. 1, p. 7.) The Court need not address the potential untimeliness of a grievance filed on January 17, 2024, regarding an event alleged to have occurred on August 29, 2023, (see PN 227.02 § IV(C)(1)(b)), because as described above, it is clear from the face of the complaint Plaintiff did not file a central office appeal.

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . .  For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time.  If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court.  And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds.  We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison.").

Similarly here, allowing Plaintiff to proceed in federal court despite his decision to short-circuit the grievance process by not filing an appeal would defeat the aims of the PLRA to review the merits of a prisoner's claim(s), and would not promote "the corrective action that might have obviated the need for litigation, . . . filter  . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy." Johnson, 418 F.3d at 1159.  The PLRA requires proper exhaustion of available administrative remedies prior to filing a federal lawsuit, which includes a requirement for compliance with procedural rules governing prisoner grievances. Id.  Additionally, because proper exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit. Higginbottom, 223 F.3d at 1261.  It is plain from the face of Plaintiff's

complaint, indeed he concedes, that he failed to complete the entire grievance process prior to commencing this case because he did not file a central office appeal once the time for the Warden's response expired.

In sum, Plaintiff did not properly exhaust his available administrative remedies, and therefore, the complaint fails to state a claim upon which relief can be granted. See Solliday, 413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted."); Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (per curiam) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted).

## II.    Conclusion

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the case be **DISMISSED** failure to state a claim upon which relief can be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 4th day of June, 2024, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

11